COOPER *v.* INTERSTATE MOTOR FREIGHT CO.

Motor Vehicles—Master and Servant—Negligence.

In action against motor freight company for death of plaintiff's decedent caused by collision with truck alleged to have been driven by employee of defendant, although truck was owned by driver's father, who had hauling contract with defendant, judgment of $25,000 in favor of plaintiff is reversed, on appeal.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 18, 1933. (Docket No. 91, Calendar No. 36,823.) Decided June 29, 1933. Rehearing denied August 29, 1933.

Case by Emma A. Cooper, administratrix of the estate of Robert Cooper, against Interstate Motor Freight Company, a Michigan corporation, for personal injuries to decedent, resulting in his death, alleged to have been due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

*Harry C. Milligan* and *Milton L. Warren,* for plaintiff.

*Alexis J. Rogoski,* for defendant.

Butzel, J. Defendant, Interstate Motor Freight Company, a Michigan corporation, transports freight by motor trucks to various points in Michigan and nearby States. It sold a motor truck on contract to one Joseph Cesiel and, coincident thereto, gave him a "hauling contract" for a term of 18 months, some of the important provisions of

which were as follows: Cesiel agreed to transport freight for defendant as a contractor and not as an employee; he was to haul and distribute freight to all points designated by defendant by motor truck and trailer, to be equipped with tarpaulins large enough to protect loads from the elements; he was to insure the truck against loss by fire, theft, or collision, and to carry public liability, property damage, and compensation insurance. He was to use the truck exclusively in the service of defendant on penalty of cancellation of the contract, and to make all c.o.d. collections and return them promptly to defendant. Defendant agreed to insure the freight loads, charging the cost against Cesiel up to one and one-half per cent. of the pay load; it also agreed to furnish suitable facilities for the proper handling of freight at its terminals. Cesiel was to maintain schedules, give proper and efficient service, and deliver and haul freight of defendant in accordance with the company's methods of handling. Cesiel was to receive 70 per cent. of the actual freight charges indicated on script sheets received by him, settlements to be made twice a month. Defendant further agreed to furnish Cesiel all the tonnage possible, with a minimum of two round trips per week. No specific tonnage was otherwise guaranteed. It was further provided that any violations of the rules and regulations of defendant or of the Federal laws, together tending to affect the interest, directly or indirectly, of defendant, would operate to void the contract forthwith. The contract was drafted entirely by defendant.

Joseph Cesiel was a farmer living in Romeo, Michigan, and did not drive the truck at any time or have anything further to do with the hauling contract after signing it. He entered into this agree-

ment solely for the purpose of giving employment to his two sons Edward and Henry, who looked after the operation of the truck and the hauling of freight for defendant. Edward did the driving and received from defendant an identification card as follows:

"Driver's identification card. Name: Edward Cesiel. Address 3382 E. Warren, Detroit, Mich. Operators number: A–12325. Chauf. No. 15209. Card No. 6–4.

"This certifies that the above-named operator is in good standing of the Interstate Motor Freight Corporation of Detroit, Michigan, recognizing all the rules, laws and regulations of the corporation as well as public safety.

"This card is for identification purposes and is not to be used for obtaining credit.

"Interstate Motor Freight Corporation, by GEO. E. WATTS, safety engineer.

"This license must be produced by the operator whenever asked to do so. It must be turned in to the safety engineer when leaving the employ of the corporation.

"EDWARD CESIEL,
"Signature of operator.

"Over. (Reverse side)

"In accepting this identification card, I, Edward Cesiel, fully understand and agree that my brother, Henry Cesiel, is not to drive truck number 38 which is owned by me. I further agree that if my brother, Henry Cesiel, is caught operating said truck it will mean the revoking of my contract with the Interstate Motor Freight Corporation.

"Signed: EDWARD CESIEL."

It will be noted that, under the terms of the card, Edward was authorized to operate the truck and his brother Henry forbidden to operate it on penalty of revocation of the contract. The card was to

be turned in when Edward left defendant's "employ."

On March 24, 1931, while the contract was in force, an accident occurred near Williamston, Michigan. The truck, driven by Edward Cesiel, while transporting a load of freight from Grand Rapids to Detroit, collided with a car driven by Robert Cooper, who sustained severe injuries from which he died a week later. Emma A. Cooper, as administratrix of his estate, brought suit against the Interstate Motor Freight Company. The jury rendered a verdict of $25,000 against defendant, and it appeals from the judgment thereon.

It is unnecessary to discuss the details of the accident. The testimony sustains a verdict based on a finding that decedent was free from contributory negligence, and that his death resulted from the negligence of the driver of the truck. A number of questions of law raised in the lower court are again presented on appeal, however.

The important question is whether Edward Cesiel, the driver, was the agent of Joseph Cesiel, and the latter was an independent contractor, or whether the relationship of master and servant existed between defendant and the Cesiels. This question has been before the court on many occasions. The great variety of fact situations presented prevents the application of a set rule, but the presence of certain facts, although not conclusive by any means, tend to indicate the nature of the relationship. The general test in each case is whether defendant retained the right of control over means employed in performing the services contracted, as distinguished from the result. Defendant asserts that the truck did not belong to it; that it did not hire the driver or pay him; that the contract was for a long term and not terminable at the will of employer, as is

usual· in the master-servant relationship; that the contract distinctly states that Joseph Cesiel is an independent contractor and liable for the negligent operation of the truck; that the compensation on a percentage basis is more consistent with an independent contractor relationship than it is with a master and servant arrangement.

The testimony, however, shows that except for the fact that the truck was purchased, and the contract entered into in his name, Joseph Cesiel had absolutely nothing to do with the performance of the contract. The fact that the compensation was not paid to him is not determinative, except in conjunction with the undisputed fact that he exercised no control over the operations whatsoever. The truck was purchased in order to give employment to his two sons. While these facts may be consistent with the relationship of an independent contractor, they are more apt to suggest an employer-employee arrangement between defendant and Cesiel's sons. The contract provided that Cesiel was to haul in accordance with the company's method of handling freight, which undoubtedly tends to indicate defendant's right of control. The provision that any violation of the rules of defendant would operate to void the contract is still further .corroboration. The identification card declared that the operator was in good standing with the defendant, "recognizing all the rules and laws of the corporation as well as public safety." It further provided that the card must be turned in by the operator of the truck when "leaving the employ of the corporation." It stipulated also that if Edward permitted his brother Henry to drive the truck, it would mean a revocation of *his* contract with defendant. The provisions of the identification card, considered together with the terms of the

hauling contract and the manner in which it was carried out, lead us to the conclusion that defendant retained control over the operation of the truck and the performance of the contract to such an extent that the relationship was that of master and servant. Even if Joseph Cesiel should be regarded as an independent contractor, his sons fell under the domination of defendant to such an extent that they became the latter's servants.

Defendant places great stress upon the case of *Gall* v. *Detroit Journal Co.,* 191 Mich. 405 (19 A. L. R. 1164), in which a truck driver was held to be an independent contractor. It will be noted that the contract in that case specifically reserved to the driver the right to deliver according to his own means and methods of conveyance and that his operations were not to be subject to the control of others. "He could use a horse, an automobile, or carry the papers on foot, provided he got them to the right persons, at the right places, and upon time." In the instant case, a right of control was reserved and exercised by defendant to such a degree as to create the master and servant relationship. See *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918C, 664); *Van Simaeys* v. *George R. Cook Co.,* 201 Mich. 540; *Conrad* v. *Cummer-Diggins Co.,* 224 Mich. 414; *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich. 89; *Eber* v. *Bauer,* 252 Mich. 571; *Marchand* v. *Russell,* 257 Mich. 96; *Lynn* v. *Roberts,* 257 Mich. 116; *H. E. Wolfe Construction Co.* v. *Fersner* (C. C. A.), 58 Fed. (2d) 27; *Howard W. Luff Co.* v. *Capece* (C. C. A.), 61 Fed. (2d) 635.

There was error, however, in the computation of damages. Decedent and one Henry T. Love were copartners engaged in the electrical business at

Howell, Michigan.  They each contributed their personal services and approximately $5,000 to the capital of the business, as well as continued additions to the firm's capital.  The testimony revealed that each partner drew $40 a week as "salary," and that the year prior to decedent's death each partner withdrew $302.50 in profits above his salary.  Just how much of the "salary" represented profits arising out of the capital investment in the business was not definitely shown.  At any rate, it was error to admit evidence as to the profits withdrawn from the business in the absence of an allocation of any part of these profits to capital investment.  Plaintiff suggests that the present worth of $302.50, the amount that decedent withdrew the previous year in excess of his salary, be determined in accordance with the mortality tables, and that the judgment be affirmed after deducting the sum so computed from the lower court's judgment.  The difficulty in such a procedure arises from the fact that there is no indication as to whether the $40 a week withdrawal represented decedent's earning capacity, or whether this amount was partly realized through the investment of the capital.  The court permitted, notwithstanding defendant's objection, the question to be propounded to Love as to "what the clear profit, the clear earnings" of decedent were the year preceding his death.  In arriving at its decision, the jury may have enlarged the verdict in the belief that the profits earned above salary would be greater in normal times.  We cannot tell how the verdict rendered was computed.  One thing is certain, however, the erroneous admission of testimony as to profits provided an opportunity for an increased verdict.  In *Silsby* v. *Michigan Car Co.,* 95 Mich. 204, in holding as reversible error the admission of

testimony showing past shop profits in determining damages in a personal injury suit, we stated:

"Furthermore, the loss of profits in conducting a business involving the labor of others is not a necessary consequence of personal injury to the plaintiff. The extent of his recovery upon this ground would be what his services were worth in the conduct of such a business as he was engaged in."

See, also, *Baxter* v. *Railway Co.*, 264 Pa. 467 (107 Atl. 881, 9 A. L. R. 504); *Lo Schiavo* v. *Northern Ohio Traction & Light Co.*, 106 Ohio St. 61 (138 N. E. 372, 27 A. L. R. 424).

For the reasons stated, judgment is reversed, with costs to defendant, and the case remanded for a new trial.

Clark, Sharpe, and Fead, JJ., concurred with Butzel, J. McDonald, C. J., and Potter, North, and Wiest, JJ., concurred in the result.