LEWIS v. SUMMERS.

1. AUTOMOBILES—BEER DISTRIBUTOR—TRUCKER—MASTER AND SERVANT—EVIDENCE—QUESTION FOR JURY.

In action against beer distributor and person who owned and operated truck which was used in making deliveries for distributor at an agreed price per case of beer delivered for injuries sustained by plaintiff in collision between her car and the truck, evidence presented question for jury as to whether distributor and trucker were employer and employee so as to render distributor liable for the trucker's negligence.

2. MASTER AND SERVANT—TEST OF RELATIONSHIP.

The test of the relationship of employer and employee is the right to control, whether in fact exercised or not.

3. APPEAL AND ERROR—INSTRUCTIONS ASSUMED PROPER WHERE NOT IN RECORD.

In action for personal injuries, brought against beer distributor and trucker, in which verdict was rendered in favor of plaintiff against both defendants, judgment was entered in favor of defendant distributor and he did not appeal, Supreme Court must assume that the court covered the issues upon the point of the relationship existing between the two defendants where record does not contain the instructions given to the jury.

BUSHNELL, C. J., and BUTZEL, J., dissenting.

Relationship of master and servant, see 1 Restatement, Agency, § 2.

Appeal from Cass; Warner (Glenn E.), J.  Submitted June 7, 1940.  (Docket No. 58, Calendar No. 41,153.)  Decided October 7, 1940.

Case by Cora Vesta Lewis against John Summers, doing business as Summers Distributing Company, and Paul Kass for personal injuries sustained in a collision between plaintiffs' automobile and a truck driven by defendant Kass.  Verdict for plaintiff against both defendants.  Judgment for defendant Summers *non obstante veredicto*.  Plaintiff appeals.  Reversed, and judgment ordered entered on the verdict.

*Lewis W. James* and *Carroll B. Jones,* for plaintiff.

WIEST, J.  The forenoon of July 18, 1936, plaintiff, while driving her automobile in a southerly direction on State highway M-40 about three and one-half miles north of the city of Dowagiac, collided with a truck driven by defendant Kass in a northerly direction, and received serious injuries.  She brought this action to recover damages against the driver of the truck and defendant John Summers, doing business under the name of Summers Distributing Company, claiming that Summers was the owner of the truck and employer of the driver and, upon trial by jury, was awarded a verdict against both defendants.  Judgment on the verdict was entered against Kass but, notwithstanding the verdict, the court entered judgment in favor of defendant Summers on the ground that, under the evidence, the truck was owned by Kass who was not an employee of defendant Summers but an independent contractor in delivering beer for Summers.

Plaintiff appeals, claiming that, under the evidence, whether Kass was an employee of defendant Summers and about the business of his employer at the time of the collision was a question of fact for the jury.

Defendant Kass has not appealed and the record contains only such part of the evidence as pertains to the issue of whether defendant Kass was an employee of defendant Summers or an independent contractor.

It appears that defendant Summers was a distributor of beer and, to make deliveries, he employed defendant Kass and his truck, paying an agreed price per case of beer delivered. This seems to have been the main employment of Kass. It is clear from the evidence that Kass and not Summers owned the truck but, under the evidence and reasonable inferences to be drawn therefrom, we think the issue of whether defendant Kass and his truck were in the employ of defendant Summers was for the jury, and the court was in error in entering judgment in favor of defendant Summers contrary to the verdict of the jury.

We had occasion in *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89, to consider a quite similar case of employment. In that case Mr. Dennis was hired, with use of his truck, to deliver coal in retail quantities to customers of the lumber and fuel company. His every act was under direction and control of the company. The coal for delivery was selected by the company, weighed under its supervision, billed by the company, and delivered in each instance under its immediate direction, and if not paid for before or at delivery, was brought back, and, if paid for on delivery, the money was brought to the company. We there said:

"This court has held that the test of the relationship is the right to control, whether in fact exercised or not. *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385 (Ann. Cas. 1918 C, 664). Mr. Dennis served the lumber and fuel company, in accord with its direction as to each load, under its right to control his movements and command his services in carrying out its business requirements, and the company had a right to dispense with the same at will without liability. Mr. Dennis was an employee and not an independent contractor."·

We there cited applicable cases.

In *Lynn* v. *Roberts*, 257 Mich. 116, we had a quite similar question and again held as in the *Dennis Case.*

Defendant Summers not having appealed and the record not containing the instructions to the jury we must assume that the court covered the issues on this point.

The judgment in favor of defendant Summers is reversed and the case remanded to the circuit court with direction to enter judgment against both defendants in accordance with the verdict of the jury.

Plaintiff will recover costs against defendant Summers.

SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred with WIEST, J.

BUTZEL, J. (*dissenting*). I think the trial court was right in entering judgment for defendant Summers, notwithstanding the verdict. Defendant Kass had been using his own truck for local deliveries of cattle, grain, and other articles. He "made a few hauls of beer" for defendant Summers in the summer of 1935, but "hauled no beer in the winter of

1935 because John (Summers) had his own trucks,'' although he ''did make a few deliveries.'' In the summer of 1936, when the accident occurred, the deliveries were made for Summers as well as for others. Kass was paid by Summers ''so much a case, depending on distance.'' Kass testified that at the time of the accident he was in the act of hauling beer for one Larson of Benton Harbor. It appears that Larson's beer was taken from an Ann Arbor brewery by Summers to his own warehouse, and then defendant Kass was paid by Larson for hauling it to Benton Harbor. At the time of the accident, the cargo consisted of about 75 cases of Larson's beer and about 10 cases of another brand of beer not originating from Ann Arbor which belonged to Summers and for some unexplained reason had been left on Kass' truck from the previous day. Kass testified that he had no instructions for the disposition of Summers' 10 cases. Kass had hauled for Larson before, stating that at the time of the accident he was making arrangements to haul right from a brewery to Benton Harbor without the intervention of Summers. Kass testified that on the day of the accident Summers had nothing to do with the load on his truck.

Defendant Summers testified that Kass trucked for him only on job lots, and was paid only by the case, distances being averaged, a little more being paid for longer distances than for shorter hauls. The beer to be delivered at the time of the accident had been ordered from Ann Arbor by Larson, and Summers called for it there the day before and took it to his warehouse in his own truck. As to payment, Summers testified:

''He (Larson) paid me separate from him for making the delivery. I had nothing to do with it at

all. * * * He was to pay me and he did pay me for bringing it from the brewery. Yes, sir. It was to go on to him. I didn't order it. Well, he had a contract job just the same as I did with Kass to pull that beer."

Summers denied that his 10 cases were to be left at any of his customers on the way to Benton Harbor, and even denied knowing they were on the truck although he did state that some beer was ordinarily left on the truck over night.

Recognizing the difficulty counsel must have in proving this element of the case solely by cross-examination of the opposite parties, I do not think the testimony taken most favorably for plaintiff establishes an employment relation between Kass and Summers on the date of the accident. The employer's right of control is the essence of the relation (Stevens, "The Test of the Employment Relation," 38 Michigan Law Review, 188).

"The general test in each case is whether defendant retained the right of control over means employed in performing the services contracted, as distinguished from the result." (*Cooper* v. *Interstate Motor Freight Co.*, 264 Mich. 131).

The load was on its way to Benton Harbor at the direction of the owner of the cargo, and the undisputed testimony establishes that the service was rendered by Kass rather than Summers, for any payment was to be made directly to Kass for his own benefit. The unexplained, perhaps suspicious, presence of 10 cases belonging to Summers, for which no instructions were given, does not warrant an inference of any right of control on his part, even if we were to assume that an employment relation did exist whenever Kass was engaged in de-

livering Summers' wares. The circumstances do not point to the result with a sufficient degree of reliability to warrant submission of the issue to the jury.

Plaintiff contends that an issue of fact as to Summers' ownership of the truck was established by a written statement made after the accident, in which Kass stated that the truck was sold by him to Summers Distributing Company "just a day or so before the accident." This statement was excluded on objection, but part of it was read on cross-examination. While this futile attempt to serve Kass' own interest might be used to impeach him as a witness, it could in no way bind Summers on the question of ownership. A vendee is not bound by statements made by his vendor subsequent to the sale without his knowledge or consent. *Kovich* v. *Church & Church, Inc.*, 267 Mich. 640. In *McAvon* v. *Brightmoor Transit Co.*, 245 Mich. 44, we affirmed the ruling of the trial court excluding testimony as to what a driver stated after an accident "in reference to the owner of the truck." In *Sexton* v. *Balinski*, 280 Mich. 28, it was held to be error to permit testimony that the driver of a car stated at the police station about 15 minutes after the accident occurred that the other defendant in the case was the owner of the car. As to the owner, we pointed out that the statement was clearly hearsay. In the case before us, if this improperly admitted statement is excluded from consideration, there is nothing upon which to support a verdict that Summers was the owner of the truck at the time of the accident.

The judgment should be affirmed, but without costs, as no brief was filed by Summers.

Bushnell, C. J., concurred with Butzel, J. The late Justice Potter took no part in this decision.