BUSKIRK v. IDE.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTORS—VERDICTS—EVIDENCE.

In action to recover for injuries sustained due to the negligence of defendants, alleged to be employers, evidence supported verdict of jury that plaintiff carpenter was an employee, not an independent contractor.

2. SAME—CARPENTER—AGENT IN CONTROL.

Carpenter who worked on defendant's house under the direction and control of another person as defendant's agent was properly found to be defendant's employee.

3. SAME — CARPENTERS — JOINT ENTERPRISE — PARTNERSHIP — EVIDENCE.

In action for injuries sustained when plaintiff fell from scaffolding while doing carpenter work at one defendant's house under the supervision of another defendant in payment of note due a third defendant who received material from first defendant in return for loan of plaintiff's services, evidence clearly established three defendants were not engaged in a joint enterprise or copartnership respecting carpenter work done by plaintiff.

4. SAME—DEFINITION OF EMPLOYEE.

An employer is a person for whom an employee does work and who has the power to control him and his work.

5. SAME—LOAN OF SERVANT.

When one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent.

6. SAME—SPECIAL SERVICE FOR ANOTHER.

A servant in the general employment of one person may also become the special servant of another, with all the mutual rights and obligations of master and servant between them for the time of, and in relation to, the special service in which the servant is temporarily engaged.

7. SAME—AUTHORITY OF EMPLOYER—CONTROL—DISCHARGE.

The authority to determine the work to be done and the manner in which it is to be carried on necessarily includes the right to suspend or terminate the work altogether or, possibly, to exclude the particular employee from the job, not including the right to discharge the employee from the service of his general employer, and it need not include the actual giving of directions to the employee in connection with the work he is doing.

8. SAME—CARPENTER—RELATIONSHIP OF EMPLOYER AND EMPLOYEE.

In carpenter's action for injuries sustained while working for owner of house, first defendant, who gave certain material to second defendant for loan of plaintiff who had given a note to second defendant which he was paying with labor, plaintiff . was. not an employee of second defendant where latter had no power to control the work being done by plaintiff.

9. SAME—CARPENTER—OWNER—AGENCY.

In carpenter's action against owner of house on which work was being done, owner's agent who supervised the work and latter's son to whom owner gave certain material in return for plaintiff's services being rendered in payment of note, where plaintiff had also given the agent a note but had worked for the agent more than enough to satisfy the note prior to sustaining accidental injuries, plaintiff was not the employee of the agent at the time of accident.

10. COSTS—AFFIRMANCE OF JUDGMENT AS TO ONE DEFENDANT AND REVERSAL AS TO OTHERS.

In carpenter's action for injuries sustained while working on house owned by first defendant, under supervision of second defendant for credit on note plaintiff owed a third defendant, no costs are allowed any party upon affirmance of judgment against first defendant and reversal of judgment as to other two defendants.

Appeal from Kent; Hoffius (Cornelius), J. Submitted April 14, 1942. (Docket No. 13, Calendar No.

41,832.)   Decided June 10, 1942.   Rehearing denied July 1, 1942.

Case by William H. Buskirk against Glen G. Ide, Sr., Glen G. Ide, Jr., Julia Ide Quigley, and Richard Edwards for personal injuries sustained in fall from scaffold. Case dismissed as to defendant Quigley. From verdict and judgment for plaintiff against remaining defendants, they appeal. Reversed as to defendants Ide. Affirmed as to defendant Edwards.

*Fuller, Sherk & Dilley,* for plaintiff.

*Earl F. Phelps,* for defendants.

STARR, J.   Defendants appeal from judgment entered on jury verdict for plaintiff in the amount of $2,530.

On December 28, 1939, plaintiff, a carpenter, 73 years old, was severely injured when a scaffold which he had built in connection with the remodeling of a house, owned by defendant Edwards, broke, causing him to fall to the ground. On February 4, 1941, plaintiff began suit against Glen G. Ide, Sr., Julia Ide Quigley, and Richard Edwards to recover damages resulting from such accident. On February 27, 1941, in pursuance of stipulation, order was entered making Glen G. Ide, Jr., a party defendant in such suit.

In his declaration plaintiff alleged, in substance, that he was employed to erect a "lean-to" to cover the cellarway and the back door of the house at 66 Kirtland street, S. W.; that, to complete the roof of such lean-to, it was necessary to build a scaffold on the outside; that he was instructed by defendant Ide, Sr., to use "rotten, dangerous, and unsafe lumber for the said scaffold;" that without negligence on his

part and because of the negligence of defendants in requiring such scaffold to be built of unsafe lumber, the scaffold collapsed and "precipitated plaintiff to the frozen ground below;" that defendants had not elected to come under the Michigan workmen's compensation law (2 Comp. Laws 1929, § 8407 et seq. [Stat. Ann. § 17.141 et seq.]) and were thereby deprived of certain defenses as provided in such law. Defendants answered, denying plaintiff's claims of negligence, and alleged that plaintiff was not their employee but was an independent contractor. The case was tried before a jury. On motion made at the conclusion of plaintiff's proofs, Julia Ide Quigley was dismissed as a defendant. The motion of defendants Ide, Sr., and Ide, Jr., for their dismissal as defendants was denied, and the trial proceeded against Ide, Sr., Ide, Jr., and Edwards as defendants. Defendants' motion for a directed verdict, made at the conclusion of all testimony, was denied. The jury returned verdict for plaintiff, and judgment was entered thereon.

Defendants' motion for new trial was denied, and they appeal, contending that the verdict was contrary to the great weight of the evidence; that they were not joint employers of plaintiff; and that the trial court erred in his instructions to the jury.

Ide, Sr., and Ide, Jr., were engaged in the real estate business. The record is not clear as to their business relationship but indicates that Ide, Jr., was working for his father, Ide, Sr., or for his father's firm, on a commission basis. In October, 1939, plaintiff arranged through Ide, Jr., as agent to purchase a house in Grand Rapids at a price of $2,800. The required down payment was $280, and plaintiff paid $200 cash, leaving a balance of $80. It was arranged between plaintiff and his wife and Ide, Sr., and Ide, Jr., that such balance of $80 would be paid by plain-

tiff and his wife's giving their promissory note to Ide, Sr., in the amount of $20 and their promissory note to Ide, Jr., in the amount of $60. Ide, Jr., testified that the $60 note was the amount of his commission on the house sale and that the $20 note given to his father (Ide, Sr.) "went to the expense of the office." It was further arranged that plaintiff would pay such two promissory notes by doing carpenter work at an agreed price of 40 cents an hour. It appears that plaintiff did carpenter work for seven days, of about nine hours each, for Ide, Sr., which, at 40 cents an hour, was more than sufficient to pay the $20 note. Ide, Sr., testified:

"He worked my note all out before he went over to Glen (Ide, Jr.). I told him he could go over and work for Glen then and he did. I told Buskirk (plaintiff) that Mr. Edwards (defendant) had this work and of course his arrangement with my son on the trading of materials for labor. I had nothing to offer him. I had nothing coming and I couldn't offer him anything. I have been and was then in the building business but not building at that particular time. Mr. Edwards (defendant) was * * * going with my daughter (Julia Ide Quigley). We talked in the very beginning of that work, with Buskirk in the office. I took him over to 66 Kirtland and talked it all over with him. I told him Mr. Edwards wanted three windows in the house moved and enlarged, two in the kitchen and one in the bathroom. We talked about the sizes and all about the way they were to be put in, the siding had to be taken off and the siding had to be put back on. I then took him out back of the house, where the cement foundation was all in, and told him we wanted to build a building on that with a roof on it, windows in it and a back door coming into the kitchen. That would be the entrance into the basement and there would be an entrance

into the kitchen underneath. This would be built over them.''

Plaintiff did a few days' carpenter work for Ide, Jr., and then began work at the house of defendant Edwards at 66 Kirtland. Ide, Jr., testified, in part:

''After Mr. Buskirk had worked for my father I talked with him about building a coal bin at my house. He finished up with my father on Friday or Saturday and the first of the week he started on mine. I also had him build a small cupboard for a house that I had at the time. That was all he did for me. I didn't have any more work for him. We talked it over in the basement of my house at 249 Griggs, that he could go over and work for Mr. Edwards, that I was to receive eight storm sash and the lumber that I built my coal bin out of; he (Edwards) gave me that in exchange for labor. Mr. Buskirk agreed to do it and I took him over to the office and we talked it over with my dad because I didn't understand what they wanted done at 66 Kirtland. * * * I had no right, title or interest in the property at 66 Kirtland street. I was over to the property several times when Mr. Buskirk was working there but did not say anything to him except 'Hello' or something like that. Father lived right across the road.''

Plaintiff testified, in substance, that he worked for Ide, Sr., then worked for Ide, Jr., and at the instruction of Ide, Sr., went to work at the Edwards' house at 66 Kirtland; and that Ide, Sr., told him ''that this was his daughter's house.'' Plaintiff further testified:

''This lean-to was a small building eight feet long, seven foot sides, covering a back door to an outside cellarway. It was a kind of a hip roof, and the lean-to was attached to the other building. It was about eight-foot sides, and the roof was to have

boards and then roofing put on. Mr. Ide told me what he wanted done and how he wanted it built. * * *

"I had the siding all on two sides after which it was necessary to erect a scaffolding. The day before we commenced the roof I spoke to Mr. Ide about the scaffolding. I commenced the roof the day I was hurt. We talked about that lumber, he went out to that pile of lumber and we looked it over and he said:

" 'If you want any extra lumber for anything there is plenty of lumber out there in that pile for scaffolding or otherwise.'

"I had mentioned to him that I had to have scaffolding and he said:

" 'There is plenty of lumber out there. Go and pick out your lumber and make it.'

"We looked over the lumber and I told him the lumber was not fit for any kind of scaffolding, it was lumber that had been torn down out of another building, lumber like that loses its strength, that was the condition I thought. He said it was all right, 'Use it.' "

Julia Ide Quigley, daughter of Ide, Sr., testified, in part:

"In December, 1939, I had no interest in the property at 66 Kirtland at all. Mr. Edwards owned the property and I was keeping company with him. My father and brother did not have any interest in the property. They and Mr. Edwards had some kind of an arrangement whereby my father was going to oversee the work. Mr. Edwards was telling him what to do, but father was overseeing the work for Mr. Edwards. It was contemplated that the place there was to be improved and it was to be our home after we were married, myself and Mr. Edwards. * * *

"Q. And your father was overseeing the job because he supposed that you were going to occupy it as your home?

"*A.* He was trying to please Mr. Edwards. Mr. Edwards was giving him all the instructions. It wasn't anybody else."

Defendant Edwards testified, in part:

"I was living over on Division avenue. I gave Mr. Ide, Sr., authority to oversee the work being done on the house. I didn't talk to Mr. Buskirk. Any arrangement made with Mr. Buskirk was made by Glen Ide, Sr. Mr. Ide, Sr., was instructed by me to oversee the work because I was away. I had met Mr. Buskirk but I didn't talk to him with regard to the work or make any arrangement with him at all. The arrangements for the work were all made by Glen Ide, Sr., under my direction and with my authority and approval."

Testimony was presented on behalf of defendants that plaintiff worked so slowly that Edwards was dissatisfied and that an agreement was made with plaintiff to do the balance of the work at the Edwards' house for a job price of $25. Plaintiff denied making any such arrangement.

In connection with putting the roof on the lean-to plaintiff built a scaffold about six feet high. He contends that he was obliged to build such scaffold out of old lumber "not fit for any kind of scaffolding;" that, when he was on such scaffold, one of the brackets broke and he fell to the ground. The medical testimony indicates that plaintiff suffered a fracture of the left hip and a compression fracture of one of the lumbar vertebrae; that he was confined in the hospital from December 28, 1939, to March 5, 1940, and thereafter confined for several months in a convalescent home; that his left leg injury is permanent, the leg being about 1¾ inches shorter than the right leg.

The question of whether or not plaintiff was an employee or an independent contractor was sub-

mitted to the jury. There was conflicting testimony from which the jury could reasonably find, as it did, that plaintiff at the time of his injury was an employee and not an independent contractor.

The court instructed the jury:

"It is for you then to determine by a preponderance of the evidence whether Mr. Ide, Sr. or Mr. Ide, Jr., or Mr. Edwards or all of these three defendants or any two of them or any one of them stood in the relation of master or employer to the plaintiff on this Kirtland street job."

The jury determined that plaintiff was employed by all three defendants and returned a verdict against all three. Defendants contend that the court erred in submitting such question of employment to the jury.

Ide, Sr., argues in effect that plaintiff was not his employee, because (1) plaintiff's promissory note to him for $20 had been paid in full by carpenter work; (2) he had no title or interest in the Edwards' house; (3) there was no joint enterprise or partnership between the defendants whereby they might be held as joint employers of plaintiff; (4) in supervising and directing the carpenter work at the Edwards' house, he (Ide, Sr.) was only acting as the representative or agent of his prospective son-in-law, defendant Edwards; (5) plaintiff's carpenter work at the Edwards' house was done for the owner, defendant Edwards, who had the power to control plaintiff and his work; and (6) because Ide, Sr., did not have the power to control plaintiff and his work.

Ide, Jr., in effect claims that plaintiff was not his employee, because (1) he had arranged with defendant Edwards for plaintiff to do carpenter work at the Edwards' house and that Edwards was to pay for such work by turning over certain sash and

lumber to him (Ide, Jr.); (2) plaintiff was to be paid for his carpenter work by credit given on his promissory note for $60 to Ide, Jr.; (3) he had no title or interest in the Edwards' house; (4) he could not and did not control plaintiff and his work at the Edwards' house; and (5) plaintiff, while working at the Edwards' house, was under the control and direction of Edwards as owner and was an employee of Edwards.

At the time of his injury plaintiff was doing carpenter work for Edwards on a house owned by him. Edwards, through his agent or representative, Ide, Sr., was directing and controlling plaintiff's work. We are satisfied that plaintiff was defendant Edwards' employee and that the judgment as against him should be affirmed.

However, more difficult questions arise as to whether or not plaintiff was an employee of Ide, Sr., or Ide, Jr., or both of them. The evidence clearly establishes that the three defendants were not engaged in a joint enterprise or copartnership as regards the carpenter work done by plaintiff at the Edwards' house. The authorities cited by plaintiff do not sustain his contention that plaintiff was an employee of all three defendants. In most of such authorities the decisions were based upon facts or findings that the defendants were engaged in a joint enterprise and were joint employers.

The question is: Who was the employer or master of plaintiff at the time of his accident? Plaintiff's employer or employers were the person or persons for whom he was doing carpenter work and who had the power to control him and his work.

Plaintiff had agreed to do carpenter work in payment of his promissory note to Ide, Jr., in the amount of $60. He had done some work directly for Ide, Jr., and such work and also his work at the Ed-

wards' house was to be credited upon such note. Ide, Jr., had made an arrangement or deal with defendant Edwards whereby plaintiff would do carpenter work on the Edwards' house. Ide, Jr., had no title or interest in the Edwards' house and exercised no direction or control of plaintiff or his work at the Edwards' house.

In *Rockwell* v. *Railway Co.*, 253 Mich. 144, 147, we said:

"It is a well-settled rule of law that when one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent. In determining whose servant he was the test is, who had the right to control him."

In *Janik* v. *Ford Motor Co.*, 180 Mich. 557, 561 (52 L. R. A. [N. S.] 294, Ann. Cas. 1916 A, 669), we said:

"The rule is long settled that a servant in the general employment of one person may also become the special servant of another, with all the mutual rights and obligations of master and servant between them for the time of, and in relation to, the special service in which the servant is temporarily engaged."

In *Lewis* v. *Summers*, 295 Mich. 20, 23, involving the question as to whether or not the relationship of employer and employee existed, Mr. Justice WIEST quoted with approval from *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89, as follows:

" 'This court has held that the test of the relationship is the right to control, whether in fact exercised or not. *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385 (Ann. Cas. 1918 C, 664).' "

The rule applicable to the present case was stated in *Jones* v. *George F. Getty Oil Co.* (C. C. A.), 92 Fed. (2d) 255, 259, 263 (decided September 7, 1937), as follows:

"The controlling factor is: *For whom is the work being performed, and who had the power to control the work and the employee?* The authority to determine the work to be done, and the manner in which it is to be carried on, necessarily includes the right to suspend or terminate the work altogether or, possibly, to exclude the particular employee from the job, not including the right to discharge the employee from the service of his general employer, \* \* \* nor need it include the actual giving of directions to the employee in connection with the work he is doing. \* \* \*

"The ultimate test is: Whose is the work being done? \* \* \* In determining whose work is being done, the question of the power to control the work is of great importance."

See, also, *Standard Oil Company* v. *Anderson,* 212 U. S. 215 (29 Sup. Ct. 252, 53 L. Ed. 480); *Rockwell* v. *Railway Co.,* 264 Mich. 626; *Arnett* v. *Hayes Wheel Co.,* 201 Mich. 67; *Lenderink* v. *Village of Rockford,* 135 Mich. 531; *Higgins* v. *Western Union Telegraph Company,* 156 N. Y. 75 (50 N. E. 500, 66 Am. St. Rep. 537); 35 Am. Jur. pp. 445, 455; 18 R. C. L. p. 490; 26 Cyc. pp. 965, 966; 39 C. J. pp. 33, 35.

Applying the above-discussed authorities to the present case, we conclude that plaintiff, at the time. of his accident, was not an employee of defendant Ide, Jr.

The remaining question is whether or not plaintiff, at the time of his accident, was an employee of Ide, Sr. Plaintiff had given his promissory note for $20 to Ide, Sr., and had agreed to pay such note by do-

ing carpenter work. From the testimony it may reasonably be inferred that plaintiff had done sufficient work for Ide, Sr., to pay such note in full. Thereafter plaintiff worked for Ide, Jr., and then went to work at defendant Edwards' house. Julia Ide Quigley lived in her father's home, which was near the Edwards' house. Julia was engaged to be married to Edwards, and they planned to live in the Edwards' house after it was remodeled. Edwards was away at work during the day, and he arranged with his prospective father-in-law, Ide, Sr., to look after the carpenter work being done at the Edwards' house. Ide, Sr., in supervising and directing the carpenter work being done by plaintiff at the Edwards' house was acting as Edwards' agent or representative. At the time of his accident plaintiff was doing carpenter work for Edwards, who had the power to control plaintiff and his work. Under the abovementioned authorities, Ide, Sr., was not plaintiff's employer at the time of his accident.

In summary, we conclude that as a matter of law defendants Ide, Sr., and Ide, Jr., were not plaintiff's employers at the time of the accident. The motion, made at the conclusion of all testimony, for directed verdict of no cause of action as to defendants Ide, Sr., and Ide, Jr., should have been granted.

The judgment against defendants Ide, Sr., and Ide, Jr., is reversed without a new trial. The judgment against defendant Edwards is affirmed. In view of our conclusion no costs are allowed.

Chandler, C. J., and Boyles, North, Butzel, Bushnell, and Sharpe, JJ., concurred. Wiest, J., took no part in this decision.