## BRINKER v. KOENIG COAL & SUPPLY CO.

1. MASTER AND SERVANT—COAL DEALERS—DELIVERERS ON TONNAGE
BASIS—INDEPENDENT CONTRACTORS—EVIDENCE.

> Appellation of ''contract carriers'' used by coal dealer in re-
> ferring to parties who owned their own trucks and delivered
> coal for it on a tonnage basis to distinguish such drivers from
> those on dealer's payroll, while pertinent and some evidence
> of relation of independent contractor, as claimed by dealer,
> does not conclusively establish such relationhip, where there
> was no written contract, since the facts, not the name
> ascribed to the carriers, establishes the relationship.

2. SAME—QUESTION OF FACT—RELATIONSHIP AS EMPLOYEE OR INDE-
PENDENT CONTRACTOR.

> In action against coal dealer for damages arising from injury
> to plaintiff wife from negligent operation of truck delivering
> coal for defendant, where court left to jury determination of
> the question as to whether the party delivering the coal was
> an employee or an independent contractor and when denying
> defendant's motion for judgment *non obstante veredicto* un-
> equivocally held there was not an independent contractor re-
> lationship, leaving the matter to the jury was not harmful
> error. ·

3. SAME—CONTROL OF PARTY DELIVERING COAL IN ANOTHER'S TRUCK.

> In action for injuries arising from negligent operation of truck
> delivering defendant's coal to its customers, driver of truck
> *held*, an employee of defendant where, although payment was
> made on a tonnage basis, and the driver was not on defend-
> ant's payroll, defendant selected the coal, weighed it, and
> directed where coal should be delivered, driver had to receipt
> for coal and payment if it were C.O.D., and the truck was
> used exclusively in delivering defendant's coal although not
> owned by it and the driver and owner thereof divided the
> profits after certain expenses were deducted from amount
> paid by defendant.

---

Distinction between a servant and an independent contractor, see
1 Restatement, Agency, § 2, and comment b; § 220 and comments.

4. Costs—Cases in One Record and Single Briefs.

> One taxation of costs is allowed upon affirmance of judgments for plaintiffs husband and wife in their two actions, tried as one case against defendant, for injuries to plaintiff wife where consolidated in one record on appeal to Supreme Court and submitted on single briefs.

Appeal from Wayne; Brennan (John V.), J. Submitted June 7, 1945. (Docket Nos. 42, 43, Calendar Nos. 43,075, 43,076.) Decided October 9, 1945.

Separate actions of case by Meta Brinker and Edward Brinker against Koenig Coal & Supply Company for injuries sustained when Meta Brinker was struck by defendants' truck. Cases consolidated. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*Cary & BeGole,* for plaintiff.

*Vandeveer & Haggerty,* for defendant.

Butzel, J. Meta Brinker was struck and severely injured by a coal truck operated by John A. Cowans, who was delivering coal for Koenig Coal & Supply Company, defendant herein. She brought suit against the latter. Edward Brinker, her husband, also plaintiff, brought suit against the same defendant to recover consequential damages because of his wife's injuries. The suits were consolidated for trial and each plaintiff was awarded a verdict for a substantial amount by a jury. The judge denied motions by both plaintiffs and defendant to direct verdicts, and also to set aside the verdicts on motions for judgments *non obstante veredicto.* The defendant appeals. The cases are brought here on one record and single briefs. No question is raised

on appeal as to the negligence and amounts of the verdicts. The main question is whether the party who drove the truck was an employee or servant of defendant or, as defendant claims, an independent contractor with whom defendant made a contract for hauling coal.

Defendant claims that the court should have held from the evidence that defendant entered into an oral contract with the owner to deliver coal on a price per tonnage basis, and that the relationship of independent contractor as to the owner and incidentally the driver of the truck was thus created, and the verdict should have been directed in its favor as a matter of law. Brief review of the facts is necessary.

Defendant, in order to carry on its large coal business, used its own trucks with drivers who were on its payroll, and it also hired privately-owned trucks to do hauling and paid for the latter on a tonnage basis of coal delivered with an additional payment in case the coal would have to be hauled to a proper receptacle or bins when it reached the premises of customers. Naturally its contract was made with the owners of the trucks. A separate and distinct record was kept as to carriers who owned their own trucks and furnished the drivers. The latter were called by defendant on some of its records and also were referred to by its witnesses as "contract carriers." This title, while pertinent and possibly of some probative value, does not definitely establish the relationship and does not conclusively show that they were independent contractors. There was no written contract and the facts, not the name ascribed to the carriers, established the relationship. There was no agreement for any term between the parties. Either one could terminate the relationship at any time without notice.

Willie Sawyer, the owner of the truck in question, came to one of defendant's yards and saw its agent in charge who had authority to make the agreement. Sawyer agreed to haul defendant's coal with his truck, to satisfy and be courteous to the customers, and to pay for any damage caused. According to defendant's witnesses the truck was to be driven to the designated yard of defendant. There the weight of the truck with the driver was first recorded and the driver was thereupon given a slip as to quantity and kind of coal he was to deliver. The driver went to the silos or receptacles in which the coal was stored and loaded the quantity and quality of coal designated. He then drove back to the scales where the truck, driver and the load were weighed. If the driver had been ordered to deliver a certain tonnage, he first loaded his estimate of the amount of the tonnage ordered, then when the truck with the driver and the coal were weighed, if it were shown that the weight was under or over the tonnage specified, the driver was obliged to either remove some or load additional coal so as to get the correct amount. The driver was shown the place of delivery on a map. He was not ordered to take any designated route nor given instructions as to speed, et cetera. When he arrived at the place of delivery, he was obliged to see that the coal was properly delivered to the bin or receptacle of the customer. At times he might be able to use a chute from the truck or dump the coal on the ground and use a wheelbarrow to make complete delivery. He was also required to clean up the premises so that no coal was left outside, also to obtain a receipt for coal delivered, and collect the amount of the bill if it was a C.O.D. order, and then return the receipt together with the moneys collected to defendant. He was paid $1.30 per ton for delivery plus a wheeling

charge of 50 cents per ton, if the coal had to be wheeled in.

The contract was made with Willie Sawyer. At first he used a different party to drive the truck, but in the early part of October, 1943, Cowans came to defendant's office. He testified as follows:

"I came in the office, I said I am driving Willie Sawyer's truck, that was the first day I started, he called them up and told him—the other boy reported wouldn't be able to work any longer because he had to go back in the factory, Sawyer called him up, and told him he had a new guy, I went over and I told him I was driving Sawyer's truck."

From that time on, before and after the accident, Cowans drove the truck. On December 22, 1943, the day of the accident, he took out three loads to various parties, making eight deliveries. Defendant paid $12 to Cowans the day of the accident for delivering coal. From September 13, 1943, to January 17, 1944, the amount paid for the hauling by defendant was $1,298.13. During the period that Cowans drove the truck, it was used exclusively for defendant's business. Cowans was not carried on the payroll of defendant. Cowans' arrangement with Sawyer was that the latter would furnish the truck, Cowans would do the hauling, and after the expenses for gas and oil had been deducted and repaid to Sawyer, the profits were equally divided. The arrangement was more in the nature of a joint venture. It was not a partnership. Defendant knew that Cowans was driving the truck. During this period the truck was used 82 days and made 231 different trips for defendant. Under these conditions, the query arises whether defendant did not have a sufficient right of control over Cowans so as

to make itself legally responsible for his negligence while driving the truck and delivering coal for defendant.

The trial judge stated that the question was in the twilight zone and left the determination to the jury. Assuming that defendant is correct, in its claims that the judge should have decided the question as a matter of law, nevertheless defendant was not harmed thereby, because it had the benefit of the jury passing upon the question and the judge subsequently in his opinion in deciding the motion for a judgment *non obstante veredicto,* finally and unequivocally held that under the facts there was not an independent contract relationship.

While the question is a difficult one, it has been very frequently before the court in various States. See 128 A. L. R. 1101, and annotations with reference to previous ones. There would be no benefit in discussing the decisions from other States. We believe the question has been settled in this State. It is true that we have many borderline cases such as *Gall* v. *Detroit Journal Co.,* 191 Mich. 405 (19 A. L. R. 1164); *Zoltowski* v. *Ternes Coal & Lumber Co.,* 214 Mich. 231; *Brown* v. *Standard Oil Co.,* 309 Mich. 101; *Bradley* v. *Republic Creosoting Co.,* 281 Mich. 177. In these cases the factual setup is very different from that in the instant case. The instant case resembles that of *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich. 89, wherein Mr. Justice Wiest, speaking for the court, said:

"Mr. Dennis was hired, with use of his truck, to deliver coal in retail quantities to customers of the lumber and fuel company. His every act was under direction and control of the company. The coal for delivery was selected by the company, weighed under its supervision, billed by the company, and de-

livered in each instance under its immediate direction, and, if not paid for before or at delivery, was brought back, and, if paid for on delivery, the money was brought to the company. * * *

"This court has held that the test of the relationship is the right to control, whether in fact exercised or not. *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918 C, 664). Mr. Dennis served the lumber and fuel company, in accord with its direction as to each load, under its right to control his movements and command his services in carrying out its business requirements, and the company had a right to dispense with the same at will without liability. Mr. Dennis was an employee and not an independent contractor."

Again in the case of *Lewis* v. *Summers,* 295 Mich. 20, wherein a minority opinion was filed expressing many of the contentions of defendant's herein, the majority opinion was signed by five of the seven Justices who sat in the case and who upheld plaintiff's contention. Mr. Justice WIEST, again speaking for the court, said:

"We had occasion in *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich. 89, to consider a quite similar case of employment. In that case Mr. Dennis was hired, with use of his truck, to deliver coal in retail quantities to customers of the lumber and fuel company. His every act was under direction and control of the company. The coal for delivery was selected by the company, weighed under its supervision, billed by the company, and delivered in each instance under its immediate direction, and if not paid for on delivery, the money was brought to the company." (Then follows a quotation from the *Dennis Case,* as given above.)

Under the law as established in this State, we believe that the driver was defendant's employee.

Plaintiffs were entitled to recover and the judgments are affirmed, but with only one taxation of costs to plaintiffs.

STARR, C. J., and NORTH, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.