821 F.2d 649
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ATLANTA INTERNATIONAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
Bernard FAULKNER and Lawrence S. Arnold, Personal
Representatives of the estates of Maria Antonia
Schaeffer, deceased, and Gary Schaeffer,
deceased, Defendants-Appellees.
 No. 86-1747
 United States Court of Appeals, Sixth Circuit.
 June 25, 1987.
 
 Before MERRITT and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this declaratory judgment action seeking to determine rights and responsibilities under an insurance policy, the District Court held that the insurance policy was in effect at the time of the accident and that the insurance company had a duty to defend the driver and pay any judgment entered against him. Because we agree with the District Court's findings of fact and conclusions of law, we affirm.
 
 
 2
 Bernard Faulkner, an independent trucker, entered into an agreement with Pioneer Truck Lines, Inc., a company engaged in the business of transporting property interstate, to lease them his truck, a 1972 GMC tractor with a 1969 Fruehauf trailer. He also agreed to operate that truck in transporting equipment from Winamac, Indiana to 3 government installations, the last one being in California. Upon execution of the lease, Pioneer gave Faulkner ICC placards to place on his truck. After execution of the lease, the tractor developed mechanical problems causing Faulkner to return to his home in Michigan to have it repaired. Pioneer knew of his plan to return to Michigan for repairs.
 
 
 3
 Upon arrival in Michigan, Faulkner originally parked the loaded trailer in front of his house. He was later asked to move it by a Department of Transportation weighmaster. He moved it to a nearby freezer company where he unloaded the trailer. The District Court found as fact that he unloaded it due to a request by the freezer company.
 
 
 4
 The mechanical problems with his tractor were so great that he had to buy a new tractor to complete the lease with Pioneer, a 1968 Mack. The trailer remained in working order and was never changed. After the purchase of the new tractor, Faulkner took a road trip to Gary, Indiana to test the new tractor. He then returned to Michigan to pick up his load. He placed his ICC placard on his truck and set out to have the trailer reloaded to continue his trip. He pulled out of his house onto the highway blocking both lanes of traffic. A car ran under his flat bed killing the two occupants of the car. This suit arose out of their deaths.
 
 
 5
 After the accident, Faulkner executed a new lease with Pioneer and continued on the trip. He retained Pioneer's ICC placards until after he made the delivery in California. After delivery, he returned both the lease and the placards to Pioneer. He also executed an ICC receipt acknowledging the exchange of the equipment and sent it to Pioneer.
 
 
 6
 The core question in this case is whether Pioneer's insurance company should be liable for the actions of Faulkner. This raises three basic issues: (1) effectiveness of the lease between Pioneer and Faulkner at the time of the accident; (2) whether Pioneer should be vicariously responsible for Faulkner's actions at the time of the accident; and (3) whether Faulkner was covered by Pioneer's insurance policy at the time of the accident.
 
 I. Validity of the Lease
 
 7
 The Interstate Commerce Act authorizes the ICC to prescribe regulations governing all aspects of the use of non-owned motor vehicles by motor carriers. See 49 U.S.C. Sec. 11107 (1982). Pursuant to this lawmaking authority, the ICC has promulgated rules to regulate the use of non-owned equipment by authorized carriers. See 49 C.F.R. Sec. 1057.[1]
 
 
 8
 Until 1985, under ICC regulations, authorized carriers[2] that employed the equipment and services of owner-operators were required to enter leases with a minimum duration of 30 days. Carriers that entered such leases were called permanent lease carriers.[3] If, however, a permanent lease carrier fell without work for the permanent lessee, ICC regulations authorized the permanent lease carrier in effect to sublease the owner-operator services and equipment to another authorized carrier. See 49 C.F.R. Sec. 1057.22. These leases were called trip leases[4] and were exempt from the 30 day rule when certain requirements were met. See 49 C.F.R. Sec. 1057.24(b). One of the requirements for exemption from the 30 day rule was that the previous load hauled must have been an exempt commodity.
 
 
 9
 In the March 23, 1982 lease Faulkner indicated that he hauled lumber on his prior trip. Although many wood products are exempt, lumber is not an exempt commodity. See ICC Administrative Ruling #119. The District Court found that the evidence supported the fact that the goods actually hauled were a nonexempt commodity--lumber. Therefore, because the requirements for a short-term lease were not met, the lease must have been for a period of more than 30 days. See 49 C.F.R. Sec. 1057.12(c).
 
 
 10
 Once an effective lease has been entered into, two requirements must be met before it can be effectively terminated: (1) the lessee must obtain a receipt from the lessor for the equipment, and (2) the lessee must obtain from the lessor its identifying placards. See 49 C.F.R. Sec. 1057.11, Sec. 1057.12(b); see also Rodriguez v. Ager, 705 F.2d 1229 (10th Cir. 1983); Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3rd Cir. 1961). The District Court found as fact that Faulkner did not return Pioneer's ICC placards or send Pioneer a receipt indicating the transfer of possession of the equipment until after final delivery of the goods on May 25, 1982. Therefore, there was a valid lease in effect at the time of the accident.
 
 
 11
 Moreover, 49 C.F.R. Sec. 1057.12(b) mandates that the duration of the lease must be specified in the lease and must coincide with the exchange of receipts. In this case, the lease provided that it would remain in effect until the 'termination of the unloading.' The District Court found that 'unloading' refers to the final destination. Hence, because the cargo had not been unloaded at its final destination and receipts had not been exchanged at the time of the accident, by its very terms the lease was valid at the time of the accident.
 
 II. Vicarious Liability of Pioneer
 
 12
 ICC regulations provide that complete responsibility for the leased vehicle lie with the authorized carrier for the duration of the lease. See 49 C.F.R. Sec. 1057.12(d)(1). Most circuits have strictly construed this regulation to impose an irrebuttable statutory employment relationship between the lessor and the lessee if the lease has not been terminated and if placards were displayed at the time of the accident. See, e.g., Rodriguez, 705 F.2d at 1229. The Sixth Circuit, however, has yet to follow this trend. In Wilcox v. Transamerican Freight Lines, Inc., 371 F.2d 403 (6th Cir.) (per curiam), cert. denied, 387 U.S. 931 (1967), this Court held that the ICC regulations do not impose liability on a carrier using leased equipment greater than that it has when operating its own equipment. Under this rationale, the Court would look to Michigan's conflicts of law rules to determine what state law would be applicable to the cause of action. In this case, this results in application of Michigan's laws regarding the doctrine of respondeat superior.
 
 
 13
 Because we agree with the District Court that under either theory Pioneer would be vicariously liable for Faulkner's actions, we need no address the continued propriety of the Wilcox rationale.
 
 
 14
 The standard for determining whether an employment relationship exists in cases such as this under Michigan law is whether the employer had the right of control over the means employed by the driver in carrying out his admission, regardless of whether the right to control was exercised or not. See Lewis v. Summers, 295 Mich. 20, 294 N.W. 82 (Mich. 1940). In this case, the lease expressly provided that Pioneer as lessee had 'exclusive possession, control and use' of the equipment. Accordingly, under Michigan law Pioneer would be vicariously liable for Faulkner's actions on the night of the accident.
 
 
 15
 III. Liability Coverage Under the Insurance Policy
 
 
 16
 The final issue is whether Faulkner was covered by the insurance policy between Pioneer and Atlanta International Insurance Company at the time of the accident. Under the terms of the policy, Faulkner must meet the requirements of a driver of a hired automobile in order to be covered. In order to gain insured status as the driver of a hired automobile under the policy, the following requirements must be met: (1) Faulkner must have been operating the vehicle within the scope of permission of Pioneer and in the exclusive business of Pioneer; or (2) he must have been en route, at the request of Pioneer, to engage in exclusive use and not transporting the property of others.
 
 
 17
 It is well--settled that courts can look to outside sources--such as lease agreements and ICC regulations--to define the status of persons covered by the insurance contract. See, e.g., Carolina Casualty Insurance Co. v. Underwriters Ins. Co., 569 F.2d 304 (5th Cir. 1978). Because the lease, pursuant to ICC regulations, mandated that Faulkner was under the exclusive control of Pioneer, he was a permissive user within the meaning of the insurance contract. Id. Therefore, because we agree with the District Court's finding that Faulkner was engaged in the exclusive business of Pioneer or was en route to engage in such exclusive business and not transporting the property of others at the time of the accident, Faulkner would be insured under the policy as long as the truck he was driving at the time of the accident was a 'hired automobile' within the meaning of the policy.
 
 
 18
 The insurance contract defines a 'hired automobile' as one not owned by the insured, which is used on behalf of or loaned to the insured. The District Court held that because the lessee had the right to control the new truck, it was a hired automobile within the meaning of the policy. Where there is a separate contract hiring or leasing a vehicle in addition to an agreement to haul a particular load, courts have held that the vehicle becomes a hired automobile. See Russom v. Insurance Co. of North America, 421 F.2d 985, 993 (6th Cir. 1970). 'The right to control equipment is generally regarded as the critical distinction between the 'hired automobile' and the 'non-owned automobile' for insurance contract purposes.' Id.
 
 
 19
 Accordingly, because Pioneer retained the right to control the equipment of Faulkner after he switched tractors, we agree with the District Court that the truck used by Faulkner on the night of the accident was a 'hired automobile' within the meaning of the policy. See also Transport Indem. Co. v. Liberty Mut. Ins. Co., 620 F.2d 1368, 1372 (9th Cir. 1980) (actual control by lessee establishes status as hired automobile); Brunner v. McCullough, 216 F. Supp. 496, 498 (E.D. Pa. 1963) (hired automobile status established by use in business of insured and acquiesence in such use).
 
 
 20
 For these reasons, we affirm the judgment of the District Court.
 
 
 
 [1]
 49 C.F.R. Sec. 1057 was substantially modified on January 7, 1985. See 49 Fed. Reg. 47850 (1984). These modifications eliminated the 30 day lease requirement relied on by the District Court in deciding this case. However, because the parties did not raise an issue in this appeal regarding the application of the former regulations to this case, and because the former regulations were in effect at the time the lease was entered into, the time of the accident, and the time this suit was filed, we will look to the former regulations in deciding this appeal. Accordingly, all citations to the Code of Federal Regulations will be to the applicable sections before the 1985 changes
 
 
 [2]
 'Authorized carrier--A person or persons authorized to engage in the transportation of property as a common or contract carrier under the provisions of 49 U.S.C. 10921, 10922, 10923, 10928, 10931, or 10932.' 49 C.F.R. Sec. 1057.2(a)
 
 
 [3]
 'Permanent lease--A lease in which the authorized carrier acquires the use of equipment, with or without driver, from an owner for a period of 30 days or more.' 49 C.F.R. Sec. 1057.2(f)
 
 
 [4]
 'Trip lease--A lease in which an authorized carrier acquires the use of equipment, with or without driver, from an owner for a period of time less than 30 days.' 49 C.F.R. Sec. 1057.2(g)